MCGUIREWOODS LLP
A. BROOKS GRESHAM SBN #155954
LAURA E. COOMBE SBN #260663
1800 Century Park East, 8th Floor
Los Angeles, CA  90067-1501
Telephone:  310.315.8200
Facsimile:  310.315.8210
bgresham@mcguirewoods.com
lcoombe@mcguirewoods.com

Attorneys for Defendants Nextel of
California, Inc. d/b/a Nextel Communications
and Sprint Solutions, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM V. R. SMITH, an individual<br><br>Plaintiff,<br><br>vs.<br><br>NEXTEL OF CALIFORNIA, INC. D/B/A NEXTEL COMMUNICATIONS, a Delaware corporation; and SPRINT SOLUTIONS, INC. d/b/a SPRINT, a Delaware corporation, and Does 1 through 20, inclusive<br><br>Defendants. | CASE NO. 2:15-cv-02485-MWF-AS<br>[Hon. Michael W. Fitzgerald]<br><br>**DEFENDANTS NEXTEL OF CALIFORNIA, INC. D/B/A NEXTEL COMMUNICATIONS AND SPRINT SOLUTIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT F.R.C.P. 12(b)(6), OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT PURSUANT TO F.R.C.P. 12(e)**<br><br>Date:          August 3, 2015<br>Time:         10:00 a.m.<br>Crtrm.:       1600 |

1    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2          **NOTICE IS HEREBY GIVEN** that, on August 3, 2015 at 10:00 a.m., or as

3    soon thereafter as this matter may be heard in Courtroom 1600 of the above-

4    captioned Court, located at 312 N. Spring Street, #G-8, Los Angeles, California

5    90012, Defendants Nextel of California, Inc. d/b/a Nextel Communications

6    ("Nextel") and Sprint Solutions, Inc. ("Sprint") (collectively "Defendants") will, and

7    hereby do, move the Court to dismiss the First Amended Complaint of Plaintiff

8    William V.R. Smith ("Plaintiff") pursuant to Federal Rule of Civil Procedure

9    12(b)(6) on the grounds that Plaintiff's First Amended Complaint fails to state a

10   claim upon which relief can be based.  In the alternative, should this Court not

11   dismiss this matter in its entirety, Defendants will, and hereby do, move the Court

12   for an order requiring Plaintiff to provide a more definitive statement pursuant to

13   Federal Rule of Civil Procedure 12(e) on the grounds that Plaintiff's First Amended

14   Complaint lacks sufficient specificity.

15         This Motion is based on this Notice, the attached Memorandum of Points and

16   Authorities, the Court's file and records in this action, all matters which may be

17   judicially noticed pursuant to Federal Rules of Evidence, Rule 201, and such further

18   oral and/or documentary evidence as properly may be presented at or before the

19   time of the hearing on this Motion.

20         This motion is made following the conference of counsel pursuant to L.R. 7-

21   3, which took place on July 2, 2015, per agreement of counsel.

22   DATED: July 6, 2015                         MCGUIREWOODS LLP

23

24                                      By:   /s/ Laura Coombe

25                                             A. Brooks Gresham
                                               Laura E. Coombe
26                                      Attorneys for Defendants Nextel of
                                        California, Inc. d/b/a Nextel
27                                      Communications and Sprint Solutions, Inc.

28
                                         2

# TABLE OF CONTENTS

Page

I.      INTRODUCTION.................................................................................. 1

II.     STATEMENT OF FACTS .................................................................. 2

III.    STANDARD OF REVIEW................................................................. 3

      A.    Rule 12(b)(6) Motion to Dismiss Legal Standard ............................ 3

      B.    Rule 12(e) Motion for a More Definite Statement Legal Standard ...... 4

IV.    ARGUMENT....................................................................................... 4

      A.    Plaintiff's FAC Should Be Dismissed for Failure to State a Claim Pursuant to F.R.C.P. 12(b)(6)........................................................ 4

            1.    Plaintiff's First Cause of Action for Breach of Contract Fails to State a Claim .............................................. 4

                 a.    Plaintiff Fails to Plead the Existence of a Contract ......... 4

                      (1)   Plaintiff's Allegations Concerning the "Pre-1997 Agreement" Do Not Allege the Existence of a Contract...................................... 4

                      (2)   Plaintiff's Allegations Concerning "the 1997 Agreement" Do Not Allege the Existence of a Contract .......................................................... 5

                      (3)   Plaintiff's Allegations Concerning "the 2001 Modification" Do Not Allege the Existence of a Contract........................................ 7

                      (4)   Plaintiff Cannot Demonstrate the Existence of a Contract with Sprint ........................................ 8

                 b.    To the Extent that a Contract Was Formed, Plaintiff Is Not a Party Thereto and Lacks Standing to Sue ......... 8

                 c.    Plaintiff Fails to Allege a Breach of Contract.............. 10

            2.    Plaintiff's Second Cause of Action for Declaratory Relief Fails as a Matter of Law Because it Is Not a Distinct Cause of Action.................................................................. 12

      B.    In the Alternative, Plaintiff Must Provide a More Definite Statement Pursuant to F.R.C.P. 12(e) ........................................... 13

V.     CONCLUSION................................................................................. 15

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4
*Allnet Communication Services, Inc.,*
  965 F.2d 1118 (D.C. Cir. 1992).................................................... 14

5
*Ashcroft v. Iqbal* (2009)
  556 U.S. 662 ....................................................................................4

6

7
*Bell Atl. Corp. v. Twombly* (2007)
  550 U.S. 544 ....................................................................................4

8
*California Earthquake Auth. V. Metro. W. Sec., LLC*
  712 F.Supp.2d 1124 (E.D. Cal. 2010) ................................... 11, 12

9

10
*Cellco Partnership v. FCC* (D.C. Cir. 2012)
  700 F.3d 534 .................................................................................. 14

11
*In re Personal Communications Network, Inc.* (Bankr. E.D.N.Y.)
  249 B.R. 233 .................................................................................. 14

12

13
*In re Toyota Motor Corp.* (C.D. Cal. 2011)
  790 F.Supp.2d 1152 .........................................................................7

14
*Kidd Communications v. FCC* (D.C. Cir. 2005)
  427 F.3d 1...................................................................................... 14

15

16
*Mid Atlantic Network, Inc.* (2008)
  23 FCC Rcd 7582 .......................................................................... 14

17
*Sprewell v. Golden State Warriors* (9th Cir. 2001)
  266 F.3d 979 ....................................................................................4

18

19
*Tak Communications, Inc.,*
  985 F.2d 916 (7th Cir. 1993) ........................................................ 14

20
**California Cases**

21
*California Ins. Guarantee Assn. v. Super. Ct.* (1991)
  231 Cal.App.3d 1617...................................................................... 12

22

23
*DeLaura v. Beckett* (2006)
  137 Cal.App.4th 542 ................................................................ 12, 13

24
*Grell v. Laci Le Beau Corp.* (1999)
  73 Cal.App.4th 1300 ..................................................................... 10

25

26
*Maxwell v. Dolezal* (2014)
  231 Cal.App.4th 93 ..................................................................... 4, 5

27
*McDowell v. Watson* (1997)
  59 Cal.App.4th 1155 ...................................................................... 12

28

ii

*Oasis West Realty, LLC v. Goldman* (2011)
  51 Cal.4th 811 ................................................................................... 9

*Shannon v. Civil Serv. Emp. Ins. Union* (1959)
  169 Cal.App.2d 79 ......................................................................... 7, 11

*Timberline, Inc. v. Jaisinghani*
  54 Cal.App.4th 1361 (1997) ............................................................. 10

*Zimco Restaurants, Inc. v. Bartenders & Culinary Workers Union, Local 340*
  165 Cal.App.2d 235 (1958) .......................................................... 11, 12

**Federal Statutes**

Communications Act of 1934 (the "Act"), 47 U.S.C. § 310(d) ......................... 14

**California Statutes**

*Cal. Civ. Code.* § 1550 ....................................................................... 6

*Cal. Civ. Code.* §§ 1550, 1605 ............................................................. 8

*Cal. Civ. Code* § 1605 ....................................................................... 6

*Cal. Civ. Proc. Code* § 367 ............................................................... 9

**Other Authorities**

Fed. R. Civ. Proc., Rule 12(b)(6) ..................................................... 3, 4

Fed. R. Civ. Proc., Rule 12(e) ......................................................... 4, 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS NEXTEL OF CALIFORNIA, INC. D/B/A NEXTEL COMMUNICATIONS AND SPRINT
SOLUTIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS, OR, IN THE ALTERNATIVE,
MOTION FOR A MORE DEFINITE STATEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff William V.R. Smith has brought this action for alleged breach of contract and for declaratory relief against Defendants Nextel of California, Inc. d/b/a Nextel Communications and Sprint Solutions, Inc.  The First Amended Complaint ("FAC"), however, is utterly devoid of allegations that the bare rudiments of an enforceable contract existed.  The piecemeal events and documents referenced in the FAC also fail to identify the subject matter of the alleged contract, its execution date, its form, or the parties' respective duties.  Although Plaintiff says he transferred his rights to FCC licensed spectrum, tellingly he does not identify the frequency of the spectrum or plausibly allege that he had any enforceable interest in it.  At most, the FAC references two letters from 1997 and 2001.  These letters do not bear Defendants' signature, fail to demonstrate mutual consideration or assent, and are addressed exclusively to non-party ArtSci, Inc., a suspended corporation ineligible to bring suit here.

Accordingly, the FAC must be dismissed because it fails to allege (1) an enforceable contract, and (2) that Plaintiff was a party to any enforceable contract, to the extent one existed, which Defendants expressly deny, with Defendants.  These defects require dismissal of Plaintiff's breach of contract and declaratory relief claim, both of which depend on basic allegations of an enforceable contract to which Plaintiff was party.

At minimum, Plaintiff should be ordered to make a more definite statement of his claims.  Although this case is about a contract regarding the transfer of certain FCC spectrum rights, Plaintiff does not identify the spectrum frequency at issue, let alone allege that he had any transferrable rights to it.  Defendants cannot reasonably respond to the FAC in the absence of such basic allegations.  On its face, this case appears to be a claim seeking compensation for an alleged promise to provide free

1

cellular telephone service on five lines for in perpetuity. Such a claim carries with it particular legal considerations and defenses. If, in contrast, this is a case seeking restitution for the purported value of FCC-licensed spectrum, different legal considerations and defenses apply. Specifically, if what Plaintiff seeks to challenge, invalidate, or seek "restitution" for some kind of alleged transfer, valuation or assignment of the license, that issue falls squarely within the FCC's primary and exclusive jurisdiction, and the Court should dismiss or stay the action pending decision by the FCC. If Plaintiff does not make such claims, any allegation or prayer suggesting he is seeking such relief should be stricken.

For the above reasons, and for all of the reasons stated below, Plaintiff's FAC should be dismissed in its entirety. In the alternative, Plaintiff should be ordered to make a more definite statement.

## II.    STATEMENT OF FACTS

Plaintiff William V. R. Smith has brought an action against Nextel and Sprint for breach of contract and declaratory relief based on unsupported claims that Nextel acquired Plaintiff's FCC radio license rights in or before 1997 in exchange for an agreement by Nextel to provide Plaintiff "with five free phones each year with free service and software forever." (FAC, ¶¶ 14-17.)

Plaintiff alleges that, in 1991, he obtained FCC radio station license rights to broadcast on an 800 MHz frequency in the Los Angeles area. (FAC, ¶ 14.) Plaintiff further alleges that Nextel "acquired Smith's license in or before 1997 in exchange for its agreement to provide Smith with free service for 20 mobile units on the existing network." (*Id.* at ¶ 16.) Plaintiff does not allege whether that agreement was written or oral, does not attach any document purporting to be a copy of that agreement, and neither alleges nor attaches any evidence concerning the nature of the "acquisition" by Nextel. (*See* FAC, *generally*.)

Plaintiff goes on to allege that, in November 1997, Plaintiff and Nextel put

2

their agreement in writing and purports to attach a copy of that agreement to the FAC as Exhibit A.  (FAC, ¶ 17, Ex. A.)  Plaintiff alleges this time that, in exchange for the radio frequency, Nextel agreed to provide Plaintiff "with five free phones with free service and software, ***forever***."  (FAC, ¶ 17) (emphasis added.)  Exhibit A to the FAC consists of a letter from Plaintiff to "Nicole" at Nextel that is not signed by any Nextel representative.  (FAC, Ex. A.)

Plaintiff further alleges that, in October 2001, Plaintiff and Nextel agreed to a modification of the 1997 agreement and purports to attach a copy of that modification to the FAC as Exhibit B.  (FAC, ¶ 18, Ex. B.)  According to Plaintiff, under the 2001 modification, Nextel again agreed "to provide five free phones and free service every year, ***forever***."  (Complaint, ¶ 13) (emphasis added.)  Exhibit B to the FAC consists of a letter from Nextel to ArtSci, Inc. and states that it is "a Nextel Service Agreement for Account Number 300710, ***ArtSci, Inc***." and states "Nextel Communications is offering the following services ***to your company***."  (FAC, Ex. B) (emphasis added.)  Further, the "Addendum to Nextel October 1 Agreement," which appears to have been authored and is signed only by Plaintiff, expressly states that "The following items are included in the agreement ***between Nextel and ArtSci, Inc.***" and provides that "***ArtSci*** is allowed free equipment upgrades (no more than one time per year, per phone)."  (*Id.*) (emphasis added.)

According to the California Secretary of State, ArtSci, Inc. has been suspended by the California Franchise Tax Board since August 2001, three months prior to the alleged 2001 Modification.  (Request for Judicial Notice ("RJN"), Ex. A [Certificate of Status].)

## III. <u>STANDARD OF REVIEW</u>

### A. <u>Rule 12(b)(6) Motion to Dismiss Legal Standard</u>

A motion to dismiss under FRCP 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  "While a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 555 (internal citations omitted). Indeed, a plaintiff must make factual allegations sufficient to raise a right to relief above the speculative level. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678 (internal citations omitted). Dismissal is proper where there is an absence of sufficient facts alleged under a cognizable legal theory. *See Sprewell v. Golden State Warriors* (9th Cir. 2001) 266 F.3d 979.

**B.** **Rule 12(e) Motion for a More Definite Statement Legal Standard**

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." *Fed. R. Civ. Proc.* 12(e).

## IV. **ARGUMENT**

**A.** **Plaintiff's FAC Should Be Dismissed for Failure to State a Claim Pursuant to F.R.C.P. 12(b)(6)**

**1.** **Plaintiff's First Cause of Action for Breach of Contract Fails to State a Claim**

"To establish a cause of action for breach of contract, the plaintiff must plead and prove (1) the existence of the contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) resulting damages to the plaintiff." *Maxwell v. Dolezal* (2014) 231 Cal.App.4th 93, 97-98.

**a.** **Plaintiff Fails to Plead the Existence of a Contract**

*(1)* *Plaintiff's Allegations Concerning the "Pre-1997 Agreement" Do Not Allege the Existence of a Contract*

4

Plaintiff alleges that, in 1991, he "obtained FCC radio station license rights to broadcast on an 800 MHz frequency in the Los Angeles area," and that "Nextel acquired Smith's license in or before 1997 in exchange for its agreement to provide Smith with free service for 20 mobile units on the existing network (a trunked system)." (FAC, ¶¶ 14, 16.) This does not allege the existence of a contract. Plaintiff does not allege whether the agreement was written or oral. *Maxwell*, 231 Cal.App.4th at 98-99 ("When an action is 'founded upon a contract,' the complaint is subject to [dismissal] if 'it cannot be ascertained whether the contract is written, is oral, or is implied by conduct) (citing *Cal. Code Civ. Proc.* § 430.10(g)). Nor does Plaintiff allege the terms of that agreement—when it was entered into ("in or before 1997" is vague at best), the nature of Nextel's "acquisition" of his license, the value of the service he was allegedly given, how long that service was to last, etc.—that establish the obligation at issue. Nor does Plaintiff allege that he performed under the terms of the agreement—he neither pleads nor provides evidence that he transferred or assigned any FCC license to Nextel—or that he was excused from doing so.

> (2)   *Plaintiff's Allegations Concerning "the 1997 Agreement" Do Not Allege the Existence of a Contract*

Plaintiff goes on to allege that "[i]n November 1997, Smith and Nextel put their agreement in writing" and attaches a November 17, 1997 letter that Plaintiff wrote to Nextel as evidence of that agreement. (FAC, ¶ 17, Ex. A) (the "1997 Letter".) Contrary to Plaintiff's allegations, the 1997 Letter does *not* demonstrate that "in exchange for the radio frequency, Nextel agreed to provide Smith with five free phones each year with free service and software forever." The 1997 Letter is a one-sided correspondence, unsigned by Nextel; does not provide for any consideration by Plaintiff; and does not, by its express language, provide for an

agreement that is to last "forever."  Plaintiff fails to allege the existence of a contract for multiple reasons.

First, Plaintiff's November 1997 letter does not provide for any consideration by Plaintiff.  "It is essential to the existence of a contract that there should be: 1. Parties capable of contracting; 2. Their consent; 3. A lawful object; and 4. *A sufficient cause or consideration*."  *Cal. Civ. Code.* § 1550 (emphasis added).  "Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled . . . is a good consideration for a promise."  *Cal. Civ. Code* § 1605.  By its plain language, the 1997 Letter is an apparent acceptance by Plaintiff of a Nextel offer to provide Plaintiff with five Nextel phones with Nextel service at no charge.  (FAC, Ex. A.)  Nowhere in the 1997 Letter is any recitation of a benefit to be conferred by Plaintiff upon Nextel in consideration for this offer.  Nowhere in the 1997 Letter is it stated, as Plaintiff would have this Court believe, that "*in exchange for the radio frequency*, Nextel agreed to provide Smith with five free phones each year with free service and software."  And by Plaintiff's own admissions, "Nextel acquired Smith's license in or before 1997," rendering it impossible that "[u]nder the 1997 Agreement, Smith's performance was complete at the outset when he transferred his rights."  (FAC, ¶ 16.)  Plaintiff could not have performed under "the 1997 Agreement" by transferring to Nextel something that it already had, as this does not constitute consideration.  Because the 1997 Letter lacks any consideration by Plaintiff, it cannot, and does not, constitute a contract between the parties.

Second, contrary to Plaintiff's allegations, the 1997 Letter does not purport to memorialize an agreement by Nextel to provide phones and service "forever," but rather recites Plaintiff's understanding that "there is no expiration to this agreement."  (FAC, Ex. A.)  As demonstrated fully below, even if there were a contract, which Defendants expressly deny, there is a distinct difference between

contracts without a specific end date, and thus terminable at will by either party, and contracts that are to compel perpetual performance.

> Contracts for life or in perpetuity will only be upheld when the intention is clearly expressed in unequivocal terms, and courts are prone to hold against the theory that a contract infers a perpetuity of right or imposes a perpetuity of obligation, and they will only construe a contract to impose such an obligation when the written document itself compels the construction and none other.

*Shannon v. Civil Serv. Emp. Ins. Union* (1959) 169 Cal.App.2d 79, 81.  The 1997 Letter, while not a contract for all of the reasons stated above, does not by its express terms claim to impose an obligation for life or in perpetuity, but rather merely states that there is not a set expiration date.

> *(3)    Plaintiff's Allegations Concerning "the 2001 Modification" Do Not Allege the Existence of a Contract*

Plaintiff alleges that, in October 2001, "Nextel and Smith agreed to a modification of the 1997 Agreement," and attaches that alleged "modification" as Exhibit B.  (FAC, ¶ 18, Ex. B) (the "2001 Letter".)  Again, Plaintiff fails to allege the existence of a contract for multiple reasons.

First, the 2001 Letter is, by its express language, "a Nextel Service Agreement," and not a modification of any pre-existing agreement.  (FAC, Ex. B.) To the extent that any enforceable contract was formed between Plaintiff and Nextel in 1997, the 2001 Letter expressly states that, because the 20 trunk system was no longer available, Nextel's performance under any previous agreement to provide that service had become impossible, and that any such agreement was expressly extinguished.  "California law has long recognized that impossibility of performance will excuse a party's performance under a contract."  *In re Toyota Motor Corp.* (C.D. Cal. 2011) 790 F.Supp.2d 1152, 1175 (citing *Mineral Park Land Co. v. Howard* (1916) 172 Cal. 289, 291).)

<u>Second</u>, Plaintiff fails to allege the existence of a contract because the 2001 Letter lacks any consideration on the part of Plaintiff. Neither the 2001 Letter nor the Addendum thereto creates any obligation for Plaintiff or requires Plaintiff to confer any benefit upon Nextel. As stated above, it is essential to the existence of a contract that there be sufficient consideration, consisting of a benefit conferred upon the promisor to which the promisor is not lawfully entitled. *Cal. Civ. Code.* §§ 1550, 1605. The 2001 Letter is an entirely one-sided offer from Nextel to ArtSci, Inc., not to Plaintiff. (FAC, Ex. B.) And, again by Plaintiff's own allegations, "Nextel acquired Smith's license in or before 1997," rendering it impossible for that license to serve as valuable consideration for a new agreement. Because the 2001 Letter lacks any consideration by Plaintiff, it cannot and does not constitute a contract.

### (4)   *Plaintiff Cannot Demonstrate the Existence of a Contract with Sprint*

Plaintiff does not allege that Sprint was a party to any of the alleged agreements that form the basis of his FAC. (*See* FAC, *generally*.) And Plaintiff does not allege that Sprint Solutions, Inc. merged with, or assumed any contracts of, Nextel. (*Id.*) Instead, Plaintiff alleges, without factual support, that "Nextel *and then Sprint* performed under the 1997 Agreement and 2001 Modification for approximately seventeen years." (*Id.*, ¶ 20.) However, for all of the reasons stated above, Plaintiff cannot demonstrate the existence of an enforceable contract as against Nextel—and by extension, Sprint.

### b.   <u>To the Extent that a Contract Was Formed, Plaintiff Is Not a Party Thereto and Lacks Standing to Sue</u>

It is elemental that to prevail on an action for breach of contract, a party must prove the following: (1) *the existence of a contract between the parties*, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach

8

and (4) resulting damages to plaintiff. *E.g. Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821. "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." *Cal. Civ. Proc. Code* § 367.

Plaintiff is not a party to the 2001 Letter. (FAC, Ex. B.) The 2001 Letter is addressed to ArtSci Inc. and the body of the letter states clearly that "This is a Nextel Service Agreement for Account Number 300710, ***ArtSci Inc***." and that "Nextel Communications is offering the following services ***to your company***." (*Id.*) ArtSci, Inc. is the party listed as being responsible for cellular overages and ArtSci, Inc. is the party given the option to request to change rate plans or add new services at any time. (*Id.*) Further, the "Addendum to Nextel October 1 Agreement," which appears to have been authored and is signed only by Plaintiff, expressly states that "The following items are included in the agreement ***between Nextel and ArtSci, Inc.***" and provides that "***ArtSci*** is allowed free equipment upgrades (no more than one time per year, per phone)." (*Id.*)

Plaintiff attempts to plead around this by alleging in his Complaint, without any evidence to support the statements, that "Although the 2001 Modification includes references to ArtSci, Inc., Smith was the contracting party and signed it himself, received the benefits himself, and was later assigned all assets of ArtSci, Inc., including rights under the 2001 Modification which were fully assignable." (FAC, ¶ 18.)

However, Plaintiff's allegation that he "was the contracting party" is belied by the express language of the 2001 Letter. And Plaintiff's allegation that he was "later assigned all assets of ArtSci, Inc., including rights under the 2001 Modification" is without merit because ArtSci, Inc. was a suspended corporation at the time of the 2001 Letter and, thus, could not have assigned the rights to a contract after the date of its suspension. (RJN, Ex. A [Certificate of Status].) "[E]xcept for

9

filing an application for tax-exempt status or amending the articles of incorporation to perfect that application or establish a new corporate name, **a suspended corporation is "disqualified" from exercising any right, power or privilege**." *Grell v. Laci Le Beau Corp.* (1999) 73 Cal.App.4th 1300, 1306 (citing *Cal. Rev. & Tax Code* § 23301 ("the corporate powers, rights and privileges of a domestic taxpayer may be suspended" if any tax due and payable is not paid) and *Timberline, Inc. v. Jaisinghani*, 54 Cal.App.4th 1361, 1365 (1997) ("This means a suspended corporation may not prosecute or defend an action in a California court.") (emphasis added.)  By Plaintiff's admission, any purported "assignment of assets" from ArtSci, Inc. to Plaintiff occurred *after* the alleged October 2001 modification and, thus, *after* ArtSci, Inc. was suspended.  ArtSci, Inc., as a suspended corporation, *could not have* "later assigned" its assets to Plaintiff following its suspension as it was disqualified from exercising its corporate powers, including the power to sell, transfer or assign assets.

ArtSci, Inc. is prohibited from bringing suit for any alleged cancellation by Sprint of its rights under the 2001 Letter by virtue of its suspension.  And Plaintiff is prohibited from bringing suit for any such alleged cancellation because ArtSci, Inc. and not Plaintiff, is the expressly named party to any 2001 agreement with Nextel.

### c.   **Plaintiff Fails to Allege a Breach of Contract**

Not only should Plaintiff's FAC be dismissed because he has failed to plead even the existence of a contract and because he lacks standing to sue thereunder, but it should be dismissed for failure to state a claim because Plaintiff has not plead any breach of a contract by Nextel or Sprint.  Plaintiff alleges that "[i]n November 2014, Nextel and Sprint breached their obligations under the 1997 Agreement and 2001 Modification by terminating [Plaintiff's] phone service."  (FAC, ¶ 20.)

Plaintiff's allegation that Nextel breached its obligations by terminating Plaintiff's phone service is directly contradicted by Plaintiff's allegations, both in

the Complaint and in the FAC, that it was Sprint that shut off Plaintiff's phone service. (Complaint, ¶ 15; FAC, ¶ 21.)  Plaintiff has not stated any claim for breach of contract as against Nextel.

And Plaintiff's allegations concerning Sprint's "breach" of the parties' alleged agreement(s) are belied by the express terms of both the 1997 Letter and the 2001 Letter.  In the 1997 Letter, Plaintiff purports to memorialize his understanding of a conversation he had with a Nextel employee, stating "there is no expiration to this agreement."  (FAC, Ex. A.)  As Plaintiff admits in Paragraph 19 of the FAC, the 2001 Letter expressly states that "**THERE IS NOT AN END DATE TO THIS AGREEMENT.**"  (FAC, Ex. B.)

California draws a distinction between contracts without an end date and contracts that, by their express terms, compel perpetual performance.  *Zimco Restaurants, Inc. v. Bartenders & Culinary Workers Union, Local 340*, 165 Cal.App.2d 235, 238 (1958).  "It is not often that a promise will be properly interpreted as calling for perpetual performance.  [citation]  A construction conferring a right in perpetuity will be avoided unless compelled by the unequivocal language of the contract.  [citation]  A contract will be construed to impose an obligation in perpetuity only 'when the language of the agreement *compels* that construction.'"  *Id.* (internal quotations and citations omitted) (emphasis in original); *Shannon* 169 Cal.App.2d at 81 ("[c]ontracts for life or in perpetuity will only be upheld when the intention is clearly expressed in unequivocal terms, and courts are prone to hold against the theory that a contract infers a perpetuity of right or imposes a perpetuity of obligation.")

A contract is without an end date regardless of whether the contract is silent as to the end date or whether the contract expressly states that it has no end date.  *California Earthquake Auth. V. Metro. W. Sec., LLC*, 712 F.Supp.2d 1124, 1131-32 (E.D. Cal. 2010).  In *California Earthquake*, the contract at issue stated that it had

11

"no defined duration," language that the court found left it "up to the parties to decide when the Agreement terminates." *Id.*  This is so because contracts without an end date are considered to be terminable at will by either party, as compared with contracts that compel perpetual performance, which must be terminated by agreement of both parties. *Zimco*, 165 Cal. App. 2d at 240.

Both the 1997 Letter and the 2001 Letter contemplate an agreement without an end date and, thus, are terminable at will.  Despite Plaintiff's allegations, neither of these letters contains the word "forever" or any promise or agreement by Nextel to continue to provide Plaintiff, or ArtSci, Inc., with either phones or service into perpetuity.  (*See* FAC, Exs. A, B.)  Sprint's decision to stop providing ArtSci, Inc. with free service cannot, and does not, constitute a breach of any agreement.

Because Plaintiff fails to allege either the existence of a contract, or a breach thereof, Plaintiff's first cause of action must be dismissed for failure to state a claim upon which relief can be based.

### 2.   Plaintiff's Second Cause of Action for Declaratory Relief Fails as a Matter of Law Because it Is Not a Distinct Cause of Action

Plaintiff's cause of action for declaratory relief also fails as a matter of law. Declaratory relief which merely tracks a contract claim has been held to be a form of relief, not a separate, stand-alone claim for relief. *McDowell v. Watson* (1997) 59 Cal. App. 4th 1155, 1159.  As a result, a claim for declaratory relief is improper where it merely replicates other substantive causes of action asserted in the pleading. *California Ins. Guarantee Assn. v. Super. Ct.*, (1991) 231 Cal. App. 3d 1617.  Where the very issues raised in the claim for declaratory judgment will be resolved by other causes of action before the court, the claim for a declaratory judgment is unnecessary and serves no useful purpose. *Id.* at 1623.  Courts may dismiss declaratory relief claims where it is evident from the face of the pleading

1    that there is insufficient basis for such claim.  *See DeLaura v. Beckett* (2006) 137
2    Cal.App.4th 542, 545.

3          Plaintiff's "cause of action" for declaratory relief expressly asks this Court to
4    consider the parties' "respective legal rights and obligations under the 1997
5    Agreement and 2001 Modification" on the grounds that Plaintiff contends that
6    Nextel, Sprint, and Does 1 through 10 have "a duty and obligation to provide
7    equipment, service, and yearly upgrades for five phones forever, and that he has an
8    assignable property right."  (FAC, ¶ 30.)  Plaintiff further alleges that "Nextel and
9    Sprint dispute this contention and contend that they are not obligated to continue to
10   perform the 1997 Agreement and 2001 Modification."  (*Id.*, ¶ 31.)  This is precisely
11   what Plaintiff asks this Court to determine in his first cause of action for breach of
12   contract.  (*Id.*, ¶ 23 [incorporating by reference all previous allegations concerning
13   the respective rights and obligations of the parties pursuant to the alleged
14   agreements] – ¶ 27.)

15         For all of the reasons stated above, Plaintiff's first cause of action fails to state
16   a claim upon which relief can be based and should be dismissed.  As Plaintiff fails
17   to state a single viable cause of action, his declaratory relief claim in turn fails as a
18   matter of law.

19         **B.     In the Alternative, Plaintiff Must Provide a More Definite**
20                 **Statement Pursuant to F.R.C.P. 12(e)**

21         Lastly, should this Court decline for either of the above reasons to dismiss
22   Plaintiff's FAC in its entirety, Plaintiff should be ordered to make a more definitive
23   statement.  "A party may move for a more definite statement of a pleading to which
24   a responsive pleading is allowed but which is so vague or ambiguous that the party
25   cannot reasonably prepare a response."  *Fed. R. Civ. Proc.* 12(e).

26         Plaintiff places at issue an FCC radio station license to broadcast on an 800
27   MHz frequency in the Los Angeles area that was allegedly "acquired" by Nextel in

28

DEFENDANTS NEXTEL OF CALIFORNIA, INC. D/B/A NEXTEL COMMUNICATIONS AND SPRINT
SOLUTIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS, OR, IN THE ALTERNATIVE,
MOTION FOR A MORE DEFINITE STATEMENT

or before 1997.  (FAC, ¶ 16.)  Plaintiff fails to allege the nature of that acquisition, fails to attach any evidence of the license at issue or to allege specifics concerning the license or the frequency at issue, and fails to allege or attach evidence concerning the FCC's review or approval of any such acquisition.  (*See* FAC, *generally*.)  The Communications Act of 1934 (the "Act") prohibits the assignment, transfer, or other disposal of an FCC license without prior approval by the FCC.  47 U.S.C. § 310(d).  This is because the licensing of radio frequencies permits the "use of such channels, but not the ownership thereof."  *Kidd Communications v. FCC* (D.C. Cir. 2005) 427 F.3d 1.  Thus, the FCC will not acknowledge a reversionary interest held by a former licensee, and a court cannot order the assignment or transfer of a license without prior FCC consent.  *Id.*; *see also Tak Communications, Inc.* (7th Cir. 1993) 985 F.2d 916.

Generally, Title III of the Act, as amended, "affords the [Federal Communications] Commission 'broad authority to manage spectrum…in the public interest.'"  *Cellco Partnership v. FCC* (D.C. Cir. 2012) 700 F.3d 534, 541-2.  Based on this broad statutory authority, the FCC is vested with the exclusive regulatory power over the allocation and licensing of spectrum rights.  *In re Personal Communications Network, Inc.* (Bankr. E.D.N.Y.) 249 B.R. 233, 237.  While a state or federal court may resolve matters relating to personal business disputes involving state contract law, the court in question may not abrogate the FCC's jurisdiction over license rights, or provide injunctive or equitable relief that would undermine the Communications Act or the FCC's regulatory decisions.  *Mid Atlantic Network, Inc.* (2008) 23 FCC Rcd 7582.  Federal courts will refer matters relating to the facts and circumstances of the licensing of particular spectrum to the FCC under the principle of primary jurisdiction.  *Allnet Communication Services, Inc.* (D.C. Cir. 1992) 965 F.2d 1118.

14

It is unclear from Plaintiff's FAC whether he seeks reversion of his alleged interest in radio frequencies "acquired" by Nextel.  It is further unclear what was the nature of any license or frequency at issue, and what was the nature of any alleged "acquisition" of that license or frequency by Nextel.  Because the FAC is unclear, Plaintiff's claims arguably should be referred to the FCC, as they appear to allege a transfer of spectrum rights without proper FCC approval.

For all of the above reasons, Plaintiff should be ordered to make a more definite statement.

## V.   **CONCLUSION**

For the foregoing reasons, Defendants Nextel of California, Inc. d/b/a Nextel Communications and Sprint Solutions, Inc. respectfully request from this Court an order dismissing Plaintiff's FAC with prejudice because Plaintiff fails to state a claim upon which relief can be based.  Alternatively, Defendants respectfully request an order requiring Plaintiff to make a more definite statement.

DATED: July 6, 2015                    MCGUIREWOODS LLP


By:   /s/ Laura Coombe
                    A. Brooks Gresham
                    Laura E. Coombe
                    Attorneys for Defendants Nextel of
                    California, Inc. dba Nextel
                    Communications, and Sprint Solutions,
                    Inc.

15